1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   EUGENE ROBERT CATE,

11          Petitioner,                No. 2:99-cv-1466 GEB JFM (HC)

12      vs.

13   DIANA K. BUTLER, Warden, et.al,

14          Respondents.              FINDINGS AND RECOMMENDATIONS

15   _____/

16          Petitioner is a state prisoner proceeding through counsel with an application for a

17   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his August 22, 1995,

18   conviction on charges of first degree murder committed in the commission of a kidnapping,

19   kidnapping, and the personal use of a firearm enhancement attached to each charge.  Petitioner

20   also challenges his sentence of life in prison without possibility of parole imposed on the first

21   degree murder conviction.[1]  Petitioner raises seven claims in his amended petition, filed April 23,

22   2004.

23   _____

24          [1] Petitioner was initially sentenced to life without possibility of parole on the murder
     conviction and a consecutive eighteen year sentence on the kidnapping conviction.  See Ex. A to
25   Answer, filed June 14, 2004, People v. Cate, No. C021736, slip op. at 1.  On direct appeal, the
     California Court of Appeal for the Third held that the eighteen year sentence should be stayed
26   because the kidnapping had also served as a special circumstance increasing the sentence for the
     murder conviction to life in prison without possibility of parole.  Id. at 16.

                                           1

FACTS[2]

On March 23, 1995, the [petitioner] left his possessions, contained in a travel trailer inside a barn or shop in Hornbrook, in the care of Muth, known as "Cowboy." The [petitioner] instructed Muth not to let anyone take the possessions. Having learned Muth let a mutual friend take a mattress from the trailer, the [petitioner], in the early morning hours of March 24, sent the mutual friend back into the shop to obtain something else from the trailer. As the [petitioner] secretly observed, Muth allowed the friend to take a socket because the friend claimed the [petitioner] would give him permission to borrow it.

The [petitioner] became angry with Muth, took him into the trailer, and accosted him verbally and physically. He told Muth to leave, and Muth asked for a ride into town. The [petitioner] backed his car up to the shop, opened the truck, and, while holding a large walking stick, directed Muth to get into the trunk. Muth did so, and the [petitioner] drove away.

The [petitioner] took Muth to a secluded ranch, where he shot him twice in the head with a rifle and dragged the body into the bushes.

The [petitioner] claimed he put Muth in the trunk because he was angry with him and did not want his company in the passenger compartment, even so, he wanted Muth away from the shop. He testified he took Muth to a freeway on-ramp and left him there to catch a ride to Yreka.

The jury found the [petitioner] guilty of first degree murder and kidnapping. The jury also found true a kidnapping special circumstance and finding of personal use of a firearm during the commission of the offense. The court sentenced the [petitioner] to an 18-year determinate term for the kidnapping with personal use of a firearm and a consecutive life term without the possibility of parole for the murder with a special circumstance. The court also ordered the [petitioner] to pay $3,336 in restitution to the victim's mother and a $10,000 restitution fine.

People v. Cate, slip op. at 2-3.

/////

/////

---

[2] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Cate, No. C021736 (September 27, 1996), a copy of which is attached as Exhibit A to Respondent's Answer, filed June 14, 2004.

ANALYSIS

I.  Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the  "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

II.  Petitioner's Claims

  A.  Ineffective Assistance of Counsel

    Petitioner's first claim is that his trial counsel provided ineffective assistance of counsel when he failed to investigate, prepare, and present a "diminished actuality" defense to the murder charge, and when he failed to bring to the trial court's attention until after the jury started deliberating that two defense instructions had been left out of the instructions given to the jury.

    The two-part test for demonstrating ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).  First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 688, 104 S. Ct. at 2065.  To this end, the petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  Id. at 690, 104 S. Ct. at 2066.  The court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  Id..  "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689, 104 S. Ct. at 2065).

    Second, a petitioner must affirmatively prove prejudice.  Strickland, 466 U.S. at 693, 104 S. Ct. at 2067.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694, 104 S. Ct. at 2068.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id..  In extraordinary cases, ineffective assistance of counsel claims

1  are evaluated based on a fundamental fairness standard.  Williams v. Taylor , 529 U.S. 362, 120

2  S. Ct. 1495, 1497 (2000), (citing Lockhart v. Fretwell, 113 S. Ct. 838, 506 U.S. 364 (1993)).

3                    1.  Failure to Present a Defense of Diminished Actuality

4              Petitioner claims that he received constitutionally ineffective assistance of counsel

5  when his counsel failed to adequately investigate, prepare and present a diminished actuality

6  defense.   Petitioner contends that his attorney was "on notice" prior to trial that petitioner

7  suffered from bipolar disorder and abused drugs and alcohol.  Amended Petition, filed April 23,

8  2004, at 26.  Petitioner further contends that a "minimally adequate investigation and use of a

9  mental health expert . . . would have provided substantial evidence that on March 25, 1995,

10  petitioner did not form an intent to murder Mr. Muth due to the combination of his mental

11  illness, sleep deprivation, and alcohol and drug use."  Id.

12            The last rejection of this claim is the decision on petitioner's state petition for writ

13  of habeas corpus filed in the Siskiyou County Superior Court, which  rejected the claim as

14  follows:

15                  Regarding the second issue, petitioner is essentially alleging that
                    his trial counsel failed to conduct sufficient investigation to enable
16                  the advancement of alternate theories defense theories inconsistent
                    with what the [petitioner] testified to at trial.  [Petitioner] testified
17                  that he did not commit the murder, and that he took the victim to a
                    freeway onramp and left him there to catch a ride.  Petitioner's
18                  allegation that his trial counsel failed to conduct certain
                    investigations is speculative, and not based on factual evidence.
19                  Further, the declaration of trial counsel, attached to the response to
                    the petition, suggests that such investigations were conducted....
20

21  In the Matter of the Application of Eugene Robert Cate for Writ of Habeas Corpus, No.

22  SCHCCR 99-788, Order filed May 25, 2000, at 2.[3]

23            ""Counsel has a duty to make reasonable investigations or to make a reasonable

24  decision that makes particular investigations unnecessary,' Strickland, 466 U.S. at 691, and

25  _____

26            [3]  A copy of this order is included as an attachment to petitioner's traverse, filed July 14,
    2004.

1   'must, at a minimum, conduct a reasonable investigation enabling him to make informed

2   decisions about how best to represent his client,' <u>Sanders v. Ratelle</u>, 21 F.3d 1446, 1456 (9th Cir.

3   1994)." <u>Franklin v. Johnson</u>, 290 F.3d 1223, 1234 (9th Cir. 2002.)  In particular, "[t]rial counsel

4   has a duty to investigate a defendant's mental state if there is evidence to suggest that the

5   defendant is impaired." <u>Douglas v. Woodford</u>, 316 F.3d 1079, 1085 (9th  Cir. 2003)(citing <u>Bean</u>

6   <u>v. Calderon</u>, 163 F.3d 1073 (9th Cir. 1998)).  In such circumstances, counsel must undertake at

7   least "'a minimal investigation in order to make an informed decision regarding the possibility of

8   a defense based on mental health.'" (<u>Franklin</u>, 290 F.3d at 1234-1235 (quoting <u>Seidel v. Merkle</u>,

9   146 F.3d 750, 756 (9th Cir. 1998).

10          Under California law, the defense of diminished actuality permits a jury to

11   consider evidence of a defendant's mental condition and/or voluntary intoxication in deciding

12   whether the defendant "actually formed the requisite criminal intent" for the crime at issue, in

13   this case first degree murder.  <u>People v. Williams</u>, 16 Cal.4th 635, 677 (1997) (citing California

14   Penal Code §§ 22(b) and 28(a)); <u>see also</u> <u>People v. Castillo</u>, 16 Cal.4th 1009, 1013-14 (1997).

15   California law defines first degree murder as the willful, deliberate, and premeditated killing of a

16   human being with malice aforethought.  Cal. Penal Code §§ 187(a), 189.  The intent to kill must

17   be the result of willful deliberation and premeditation.  <u>See</u> <u>Patterson v. Gomez</u>, 223 F.3d 959,

18   965 (9th Cir. 2000).

19          Petitioner's defense at trial was an alibi defense.  In a declaration filed in

20   petitioner's state habeas proceedings, trial counsel averred that the defense offered at trial was

21   "inconsistent with a diminished capacity defense," as were specific statements made by petitioner

22   "concerning the crime."  <u>See</u> Ex. C to Answer, Declaration of Frank J. O'Connor (O'Connor

23   Declaration), at ¶3.  Petitioner argues that extensive evidence of his prior mental health history

24   and drug use were either available to his trial counsel or easily acquired upon reasonable

25   investigation, and should have been used to advance the theory of diminished actuality.

26   /////

6

1    Although it is apparent from the record that petitioner's counsel was aware that

2    petitioner suffered from bipolar disorder and that petitioner abused drugs and alcohol, the record

3    does not contain evidence establishing the extent of counsel's investigation of petitioner's mental

4    health history and history of alcohol and drug abuse.  Petitioner has the burden of showing that

5    the investigation his trial counsel conducted was insufficient to make an informed decision

6    concerning the defenses available to petitioner.  Petitioner would have the court infer an

7    inadequate investigation from facts he contends could have been discovered by counsel and/or

8    introduced at trial.  The existence of additional information does not, however, without more

9    establish that counsel's investigation was inadequate.

10    Nor has petitioner established that counsel's decision not to present a diminished

11    actuality defense was unreasonable.  In his state habeas corpus petition, petitioner contended that

12    prior to trial he told his attorney that "he only remembered bits and pieces of the evening in

13    question when [the] alleged murder/kidnapping took place."  Ex. 1 to Traverse, at 16.  This

14    contention is contradicted by petitioner's own trial testimony, as well as by the testimony of

15    prosecution witnesses.[4]  At trial petitioner testified in significant detail about the events that led

16    him to drive Muth away from petitioner's trailer on the night Muth was murdered.  <u>See</u>

17    Reporter's Transcript on Appeal (RT) at 1274 et seq.  He testified that after he got into a dispute

18    with Muth, he put him in the trunk of his care and drove him to the highway on-ramp and told

19    Muth he would have to hitchhike from there.  He testified that he dropped Muth off no more than

20    ten minutes from his trailer, the place they left from.  <u>Id</u>. at 1280.  He also testified in detail about

21    what he did after he allegedly dropped Muth off at the side of the highway.  <u>Id</u>. at 1280 et seq.

22    Petitioner's stepbrother also testified in great detail about petitioner's statements to him about

23    how petitioner killed Muth.  <u>See</u> RT at 518-520.

24

25    [4]  Petitioner's counsel averred in his declaration that this was "new information which is
totally different from what he told me at the time."  O'Connor Declaration, at ¶ 4.  The court
26    need not resolve this factual dispute.

7

1    Petitioner's testimony concerning his mental status was also inconsistent with a

2  diminished actuality defense. On cross-examination, petitioner testified that he had consumed

3  some alcohol and smoked some pot on the day of the murder, but that he didn't "feel that drunk"

4  and that he was "pretty much in control." Id. at 1323.  He also testified that he had used some

5  "crank" but he didn't feel "edgy" until he and Muth got into the argument that preceded Muth's

6  murder.  Id. at 1340.  He testified that if he wasn't "under the influence" he probably wouldn't

7  have put Muth in the trunk, but he "would have still been upset." Id. at 1341.  After careful

8  review of the entire record, this court finds that petitioner has failed to establish that his

9  attorney's investigation of and failure to pursue a diminished actuality defense was outside the

10  bounds of reasonably competent representation.

11    The court further finds that petitioner has failed to show cognizable prejudice as a

12  result of trial counsel's failure to pursue a defense of diminished actuality.  The court has

13  reviewed the evidence tendered by petitioner, including the declaration of Dr. Joan Gerbasi.  Dr.

14  Gerbasi offers the opinion that petitioner's "criminal behavior was in part attributable to

15  methamphetamine intoxication" and that "heavy methamphetamine . . . causes paranoia and

16  impulsive aggression."  Report of Joan Gerbasi, J.D., M.D., filed under seal pursuant to this

17  court's August 4, 2005 order, at 12.  Dr. Gerbasi specifically notes that she has "no opinion of

18  whether the [petitioner] was being truthful in his account of the circumstances surrounding the

19  homicide," but if petitioner's statements were true his "acts were consistent with the extreme

20  aggression and rage that has been associated with methamphetamine intoxication." Id. at 11.  In

21  order to succeed, a defense of diminished actuality requires a showing that petitioner did not

22  form the requisite intent to kill Muth.  The evidence of petitioner's mental health history and

23  history of drug and alcohol abuse, while not insignificant, does not contravene all of the other

24  evidence in the record that supports petitioner's first degree murder conviction.  After review of

25  the record, this court finds no reasonable probability that the outcome of petitioner's trial would

26  have been different had counsel pursued a defense of diminished actuality.

1    For the foregoing reasons, the state court's rejection of this part of petitioner's

2 ineffective assistance of counsel claim was neither contrary to, nor an unreasonable application

3 of, clearly established federal law.  This claim should be denied.

4    2.  Failure to Assure Trial Court Gave All Defense Instructions Prior to the Start

5 of Deliberations.[5]

6    The facts relevant to this claim were set forth by the state court of appeal on

7 petitioner's direct appeal, as follows:

> After the trial court completed giving its instructions and sent
> the jury to deliberate, it discovered it had not given all of the
> instructions.  It had failed to give the instructions on use of
> evidence concerning mental disease in determining whether the
> crime was premeditated and deliberate (CALJIC No. 3.32) and on
> the use of alibi evidence (CALJIC No. 4.50).  The clerk's transcript
> reveals the jury was sent to the jury room at 3:50 p.m. on July 20,
> 1995 to begin its deliberations.  At 4:29 p.m., just 39 minutes later,
> the jury returned to the courtroom and the court read the last two
> instructions.

People v. Cate, slip op. at 9-10.  At 4:31 p.m., the court stood in recess, and the jury continued

deliberating until 5:00 p.m., when they were "admonished and excused by the bailiff until 9:00

a.m." the next morning.  Clerk's Transcript on Appeal (CT), at 201.  The next day the jury started

deliberating at approximately 9:00 a.m. CT at 297.  They took a twenty minute recess from

10:30 a.m. until 10:50 a.m., and a lunch recess from 12:00 p.m. until 1:30 p.m., after which they

deliberated until 2:21 p.m., at which point they notified the bailiff they had reached a verdict.  Id.

Petitioner contends that trial counsel had a duty to ensure that the jury was

---

[5]  On direct appeal, petitioner raised in the state court of appeal a claim based that his
right to a fair trial was violated by the trial court's failure to give two defense instructions at the
start of deliberations.  See People v. Cate, slip op. at 9-12.  That claim is also raised as Ground
Six in the Amended Petition.  It does not appear that petitioner pursued this claim in his petition
for review to the California Supreme Court.  See Amended Petition, at 4.  Nor does it appear that
petitioner raised this claim of ineffective assistance of counsel in any of his state petitions for
post-conviction relief.  See Amended Petition at 1-9.  Respondents address this claim with
reference to the state court of appeals' decision on direct appeal, and do not argue that the claim
should be dismissed as unexhausted.  See Answer to Petition for Writ of Habeas Corpus, filed
June 14, 2004, at 8-10.  The claim may be denied on the merits notwithstanding the apparent
absence of exhaustion of state court remedies.  See 28 U.S.C. § 2254(b)(2).

1   properly instructed at the start of deliberations and that counsel's failure to meet this obligation

2   was prejudicial because the absence of the instructions "allowed the jury substantial time to

3   fixate on petitioner's guilt[] without the benefit of these defense instructions."  Amended

4   Petition, at 34.  Petitioner further contends that it is likely that giving the instructions after the

5   start of deliberations was "futile as the jurors had been in the process of determining petitioner's

6   guilt for a substantial time before receiving these instructions crucial to petitioner's case."  Id. at

7   34-35.  Petitioner also contends that the trial court did not instruct the jury to restart their

8   deliberations after receiving the additional instructions and that counsel also erred in failing to

9   request that the court so direct the jury.

10          For the reasons set forth in section IIF, infra, petitioner's constitutional right to a

11  fair trial was not violated by the failure to give these two instructions at the start of deliberations.

12  Petitioner was not prejudiced by counsel's failure to bring the omission to the court's attention

13  prior to the start of deliberations, or by counsel's failure to request that the court instruct the jury

14  to restart deliberations after receiving the two defense instructions.  This aspect of petitioner's

15  ineffective assistance of counsel claim should be denied.

16          B.  Sufficiency of the Evidence for Special Circumstances Murder

17          Petitioner's second claim is that there was insufficient evidence that the

18  kidnapping had a purpose independent of the murder.  Petitioner contends therefore that the

19  special circumstance part of petitioner's sentence must be stricken.

20          The last reasoned rejection of this claim is the decision on direct appeal by the

21  California Court of Appeal, Third Appellate District.  The state court of appeal addressed this

22  claim as follows:

23          "The felony-murder special circumstance is 'inapplicable to
            cases in which the defendant intended to commit murder and only
24          incidentally committed one of the specified felonies while doing
            so.' [Citation.]."  (People v. Raley (1992) 2 Cal.4th 870, 902.)  The
25          [petitioner] claims the kidnapping special circumstance must be
            stricken because it was merely incidental to the murder.  To
26          support this argument, he quotes the prosecutor's closing argument

in which the prosecutor theorizes the [petitioner]'s only purpose in kidnapping Muth was to kill him. We need not accept this theory. "We must examine the evidence in the light most favorable to the prosecution and decide whether a rational trier of fact could find beyond a reasonable doubt that defendant had a purpose for kidnapping apart from murder." (*Ibid*.)

"The jury was not bound to accept the prosecutor's argument that defendant's plan from the beginning was to kill [Muth]." (*Raley, supra*, 2 Cal.4th at p. 902.) The court instructed the jury that "the [kidnapping] special circumstance...is not established if the kidnapping was merely incidental to the commission of the murder." We presume the jury followed the instruction. (*People v. Sanchez* (1995) 12 Cal.4th 1, 70.) With that in mind, we find more than sufficient evidence to uphold the implied finding by the jury that kidnapping was not merely incidental to the murder.

The prosecutions's evidence was sufficient to support the jury's determination that the kidnapping was not incidental to the murder. The [petitioner] did not express an intention to kill Muth when, by show of force, he had Muth get into the trunk. There was no evidence that the [petitioner] had already formed the intent to kill at the time he kidnapped Muth. Indeed, the [petitioner] later admitted that Muth pushed him (the [petitioner]) too far and he just "lost it" and had gone "too far." He also said: "Why do people push me? Why do people push me to a point like they do?" He told Jesse Tucker he drove Muth to a location away from the shop. Once there, he took Muth out of the trunk and told Muth to shut up, but Muth was stuttering a grabbing for the [petitioner]'s gun, so the [petitioner] shot him. Thus, it was reasonable to believe, and the jury so found, that the [petitioner]'s original intent was only to kidnap Muth to get him away from the shop. In the course of kidnapping, though sometime after it began, the murderous intent, or, at least, the determination to take action that directly led to Muth's death, was formed. The [petitioner]'s testimony gave rise to the inference the [petitioner] did not kidnap Muth having already formed the intent to kill. By his own admission, he just wanted to get Muth on his way to Yreka or some other destination, albeit, by involuntary means, in the trunk of a car.

People v. Cate, slip op. at 3-5.

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light more favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Under Jackson, the court must review the entire record when the sufficiency of the evidence is challenged on habeas.

11

1   Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d

2   722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is the province of the jury to 'resolve

3   conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic

4   facts to ultimate facts." Jackson, 443 U.S. 307, 319.  "The question is not whether we are

5   personally convinced beyond a reasonable doubt.  It is whether rational jurors could reach the

6   conclusion that these jurors reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).

7   Under Jackson, the federal habeas court determines sufficiency of the evidence in reference to the

8   substantive elements of the criminal offense as defined by state law.  Jackson, 443 U.S. 307, 324

9   n.16.

10          Petitioner was charged with first degree murder in the commission of kidnapping,

11  a special circumstance felony-murder under former California Penal Code § 190.2 (a)(17)(ii).

12  This special circumstance provided for the death penalty or life imprisonment without the

13  possibility of parole if "[t]he murder was committed while the defendant was engaged in or was

14  an accomplice in the commission of, attempted commission of, or the immediate flight after

15  committing or attempting to commit the following felonies: ... (ii) Kidnapping in violation of

16  Section 207 or 209."  Former Cal.Penal Code § 190.2(a)(17)(ii).  "To prove a felony-murder

17  special circumstances like murder in the commission of a [kidnapping], 'the prosecution must

18  show that the defendant had an independent purpose for the commission of the felony, that is, the

19  commission of the felony was not merely incidental to an intended murder.'" People v. Bolden,

20  29 Cal.4th 515, 554 (2002).  The "independent purpose" may be "concurrent" with the purpose

21  of the murder.  See Clark v. Brown, 450 F.3d 898, 905-06 (9th Cir. 2006) (discussing People v.

22  Clark, 50 Cal.3d 583 (1990).[6]

23

24          [6]  In Clark v. Brown, the United States Court of Appeals for the Ninth Circuit noted that
    under People v. Green, "a felony qualified under the special circumstance statute only if two
25  requirements were satisfied: (1) the felony, such as robbery or arson, must have been committed
    for a purpose 'independent' of the murder, and (2) the murder must have been committed in
    order to advance that 'independent felonious purpose.'"  Clark v. Brown, 450 F.3d at 910
26  (quoting People v. Green, 27 Cal.3d at 61). The United States Court of Appeals found that in

1     This court has reviewed the entire record of petitioner's state court trial.  After

2  completion of said review, this court finds that the evidence cited by the state court of appeals

3  fully supports the determination that there was sufficient evidence to find that the kidnapping of

4  Muth was independent of his murder.  The state court's rejection of this claim was based on a

5  reasonable determination of the facts in the record, and was neither contrary to nor an

6  unreasonable application of federal law.  Accordingly, this claim should be denied.

7     C.  Felony-Murder Instruction

8     Petitioner's third claim for relief is also grounded in his contention that the

9  kidnapping was not independent of the murder in this case.  In his third claim, petitioner

10  contends that his right to due process was violated when the trial court improperly instructed the

11  jury on felony-murder as an alternative theory of liability for first degree murder.  Specifically,

12  the jury was instructed that malice, premeditation and deliberation were findings necessary to a

13  first degree murder conviction, and that those requirements could all be satisfied by a finding that

14  the killing occurred during the commission of a kidnapping.  Petitioner contends that the felony-

15  murder instruction was improper in this case because the evidence only showed that the

16  kidnapping was the means to commit the murder and "had no independent felonious purpose,"

17  and, therefore, that the kidnapping "merged" with the murder and "cannot be used as the

18  predicate crime for a finding of felony-murder."  Amended Petition, filed April 23, 2004, at 40.

19     The state court of appeal rejected this claim, as follows:

20     The defendant applies the same line of reasoning [as his
       sufficiency of the evidence claim] to argue the kidnapping merged
21     into the murder, and, therefore, the kidnapping could not be the
       basis for a jury finding of felony murder, one of the two alternative
22     ways the jury was allowed to find the defendant guilty of first

23  _____

24  People v. Clark, "the California Supreme Court had the California Supreme Court dramatically
    altered the interpretation of the special circumstance statute that it had previously provided in
25  [People v. ] Green" by including a concurrent felonious purpose within the definition of
    independent felonious purpose required for special circumstance felony murder, and by
26  eliminating the requirement that the murder had to advance the purpose of the independent
    felony.  Clark, 450 F.3d at 910-911.

1       degree murder.  (*People v. Ireland* (1969) 70 Cal.2d 522, 539-540.)
2       Nonetheless, the jury's finding, noted above, that the kidnapping
      was not incidental to the murder, defeats this argument as well.
3       Since the kidnapping was not incidental to the murder, the jury
      could base a felony murder verdict on the defendant's kidnapping
4       of Muth.  (See *People v. Hansen* (1994) 9 Cal.4th 300, 316.)

5   People v. Cate, slip op. at 5.

6            The merger doctrine prohibits a conviction for felony-murder when the underlying

7   felony is "an integral part of the homicide."  (La Rue v. McCarthy, 833 F.2d 140, 141 (9th Cir.

8   1987) (quoting People v. Smith, 35 Cal.3d 798, 803-804, 678 P.2d 886, 888-889, 201 Cal.Rptr

9   313-314(1984)).  "A felony murder instruction, however, still may be given if the underlying

10   offense, even though an integral part of the homicide, was committed with an independent

11   felonious purpose."  La Rue, at 141.  As explained in section IIB, supra, there is sufficient

12   evidence to support the jury's finding that petitioner's kidnapping of the victim was independent

13   of the subsequent murder.   Accordingly, the merger doctrine does not apply.  Id.  The state

14   court's rejection of this claims was neither contrary to, nor an unreasonable application of,

15   clearly established federal law,[7] nor was it based on an unreasonable determination of the facts.

16   Petitioner's third claim for relief should be denied.

17         D.  Admission of Testimony that Petitioner Had Previously "Gotten Away with Murder"

18            Petitioner's fourth claim is that his due process rights were violated by the

19   admission of testimony that petitioner had previously claimed to have "gotten away with

20   murder".  Respondents contend this claim is procedurally barred because petitioner failed to

21   object to the testimony at trial.[8]

22

23        [7]  Respondents contend that "petitioner has no constitutional right to the application of the
  merger doctrine" and that this claim does not present a federal question.  Answer to Petition for
24   Writ of Habeas Corpus, filed June 14, 2004, at 11.  Respondents also contend that the merger
  doctrine only applies when the underlying felony is assault.  Id.  In the circumstances of this case,
25   the court need not resolve either of these contentions.

26        [8]  In his traverse, petitioner argues that respondents' contention that this claim is
  procedurally barred does not bar a claim that counsel was ineffective in failing to object to this

The facts relevant to this claim were set forth by the state court of appeal as follows:

> During the defense case, the prosecution cross-examined Myrtle Mitchell, the grandmother of Jesse Tucker, the [petitioner]'s former step-brother.  The [petitioner] told Tucker he had killed a man, but Tucker did not believe him until he saw a news story concerning the killing on television.  Mitchell gave the following testimony:
>
> Q: So you were sitting with Jesse when you saw that news report?
>
> A: Yes, sir, uh-huh.
>
> Q: Can you describe how he seemed in terms of whether he was? [*Sic.*]
>
> A: He was upset.  He was upset.  He said, "It has to be Gino [the defendant]."  He said, "I don't know what to do.  I don't know what to say."
>
> Q: Before that news story came out, was he upset?
>
> A: Well, he was puzzled about it all the time.  He said, "I just don't think Gino would do anything like that, but he has told me in the past that he killed someone and thrown their [*sic*] body down a mine shaft and said it would never been [*sic*] found."
>
> Q:  He didn't believe that?
>
> A: No, he didn't believe that, either.  But it was something that Gino had told him several times.
>
> Q: Did Jesse tell you that he thought there [sic] was another one of Gino's tall tales?
>
> A: Yes.
>
> The [petitioner] claims the admission of this statement concerning killing someone and throwing the body down a mine shaft was reversible error.  He avoids, however, noting that he made no attempt to remedy the situation in the trial court, though he contends the answer would have been subject, at least, to an instruction from the trial court limiting the use of the statement to Tucker's statement [sic] of mind.  The [petitioner] did not object to

testimony.  Petitioner's Traverse in Support of Habeas Relief, filed July 14, 2004, at 10-11.  There is no claim of ineffective assistance of counsel based on the failure to object to this testimony raised in petitioner's amended petition.

the answer as nonresponsive, move to strike and admonish the jury, or move for a mistrial.  Notwithstanding this failure, he asserts that any attempt to remedy the situation would have been futile because the jury could not possibly follow the court's admonition.  We disagree.

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground for the objection or motion; and [¶] (b) The court which passes upon the effect of the error or errors is of the opinion that the admitted evidence should have been excluded on the ground stated and that the error or errors complained of resulted in a miscarriage of justice."  (Evid. Code, § 353.)

By failing to make a curative motion in the trial court, the [petitioner] deprived the court of the opportunity to either make a ruling on the admissibility of the evidence or admonish the jury concerning the permissible use of the testimony.  Accordingly, he did not preserve the issue for appeal.  (*People v. Morris* (1991) 53 Cal.3d 152, 195.)  In addition, Mitchell's passing reference to the [petitioner]'s prior statements, referred to as "tall tales," is not so prejudicial that the jury could not have heeded an admonition.  (See *Marshall v. United States* (1959) 360 U.S. 310, 312 [3 L.Ed.2d 1250, 1252].)  Instead, the court was not given the opportunity to decide it.  The contention is not cognizable on appeal.

People v. Cate, slip op. at 5-7.

Petitioner failed to object at trial to the testimony challenged herein.  "A federal court will not review questions of federal law decided by a state court if the decision also rests upon a state law ground that is independent of the federal question and adequate to support the judgment."  Melendez v. Pliler, 288 F.3d 1120, 1124 (9th Cir. 2002) (citing Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

If a claim is procedurally barred by an adequate and independent state ground, . . ., in appropriate circumstances a federal court may still review the merits of the defaulted claim. "The doctrine of procedural default is based on comity, not jurisdiction, and the federal courts retain the power to consider the merits of procedurally defaulted claims." Harmon v. Ryan, 959 F.2d 1457, 1461 (9th Cir.1992). Federal habeas review is barred, however, unless the habeas prisoner can demonstrate "cause for the default

16

> and actual prejudice as a result of the alleged violation of federal
> law, or demonstrate that failure to consider the claims will result in
> a fundamental miscarriage of justice." Coleman, 501 U.S. at 750,
> 111 S.Ct. 2546.

Vansickel v. White, 166 F.3d 953, 958 (9th Cir. 1999).

The United States Court of Appeals for the Ninth Circuit has held that California's contemporaneous objection rule, precluding appellate review of the admissibility of evidence unless there is a clearly expressed, timely objection giving the trial court a reasonable opportunity to rule on the merits of the objection, is firmly established and clearly followed.  See Melendez, 288 F.3d at 1125 (citing Garrison v. McCarthy, 653 F.2d 374, 377 (1981).  Petitioner's failure to object at trial to the challenged testimony precludes review of this claim.  Moreover, the record does not support a finding that failure to consider this claim "will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750.  For this reason, petitioner's fourth claim for relief should be denied.

E.   The Jury Instruction Regarding Consent to a Kidnapping Did Not Violate Due Process.

Petitioner's fifth claim is that his rights to a fair trial and to due process were violated by the trial court's instruction regarding consent to a kidnapping.  Petitioner contends that language in the instruction concerning the victim's knowledge of the purpose of the kidnapping was vague, contrary to California law and could have permitted the jury to find that the victim was kidnapped without determining that the kidnapping was accomplished by force which is a necessary element of kidnapping under California law.  The last reasoned state court rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court of appeal addressed this claim as follows:

> The [petitioner] claims the trial court erred by giving former
> CALJIC No. 9.56 without modifying it, because it allowed the jury
> to find a kidnapping by deceit, rather than by force or fear as
> required by *People v. Green* (1980) 27 Cal.3d 1, 64.  The court
> instructed the jury as follows: "When one consents to accompany
> another, there is no kidnapping so long as such condition of

consent exists. [¶] To consent to an act or transaction, a person must, one, act freely and voluntarily not under the influence of threat, force or duress; two, have knowledge of the true nature of the act or transaction involved; and three, possess sufficient mental capacity to make an intelligent choice whether or not to do something proposed by another person."

The [petitioner] claims the second element of consent stated in the instruction, to "have knowledge of the true nature of the act or transaction involved," suggested to the jury the victim had to know the true purpose of the asportation to consent effectively and, therefore, may have found an absence of consent based on Muth's mistaken belief concerning the reason for being put in the trunk and taken away.  In other words, the jury may have found Muth's mistaken belief the [petitioner] was taking him to Yreka or to the highway vitiated his consent because the [petitioner]'s intent, in reality, was malignant.

This contention has been rejected by the Supreme Court.  (*People v. Davis* (1995) 10 Cal.4th 463, 517, 518.)  "Although the instruction, CALJIC 9.56, is not well-worded, it correctly states the law.  It does not declare or suggest the fraud, deceit, or dissimulation vitiate consent.  The phrase 'act or transgression,' which appears twice in the instruction, refers to the earlier phrase 'to accompany another.'  Thus 'knowledge of the true nature of the act or transaction involved' refers to the act or transaction of accompanying another, i.e. physical asportation."

The [petitioner] responds to this Supreme Court precedent as follows: "Apparently realizing that this *apologia* for the language at issue was not persuasive by itself because in fact the two phrases are not linked, the Court relied on other factors in that case to find that 'there was no reasonable likelihood that the jury would have understood the instruction' to mean that fraud, deceit, or dissimulation vitiated consent."  While it is true the *Davis* court gave additional reasons for finding the instruction was erroneous, we are not at liberty to reject the court's holding that the instruction accurately stated the law.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)  Accordingly, we reject the [petitioner]'s contention.

People v. Cate, slip op. at 8-9.

In general, a challenge to jury instructions does not state a federal constitutional claim.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable,

1  erroneous, or even "universally condemned,"' but must violate some due process right

2  guaranteed by the Fourteenth Amendment." Prantil v. California, 843 F.2d 314, 317 (9th Cir.

3  1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)).  To prevail on such a claim

4  petitioner must demonstrate that the "ailing instruction . . . so infected the entire trial that the

5  resulting conviction violates due process."' Middleton v. McNeil, 541 U.S. 433, 124 S. Ct. 1830,

6  1832 (2004) (quoting Estelle v. McGuire, 502 U.S. 62, 72, 112 S.Ct. 475, 482, 116 L.Ed.2d 385

7  (1991)(quoting Cupp, 414 U.S. at 147)).

8          Petitioner's claim proceeds from the contention that CALIC No. 9.56 is an

9  insufficient statement of California law.  However, the California Supreme Court has held that

10  CALJIC No. 9.56, while not "well-worded", correctly states California law.  People v. Davis, 10

11  Cal.4th 463, 517 (1995).  The state court of appeal following that holding in its decision on

12  petitioner's direct appeal.  This court is bound by the state courts' interpretation of state law. See

13  Shannon v. Newland, 410 F.3d 1083, 1087 (9th Cir. 2005)(citing West v. Am. Tel. & Tel. Co.,

14  311 U.S. 223, 237-38, 61 S.Ct. 179, 85 L.Ed. 139 (1940)).  For this reason, petitioner's fifth

15  claim for relief should be denied.

16      F.  Failure to Give Two Instructions at Start of Deliberations

17          Petitioner's sixth claim is that his constitutional rights to due process and a fair

18  trial were violated by the trial court's failure to give two defense instructions prior to the start of

19  deliberations.  See Section IIA2, supra  The last reasoned state court rejection of this claim is the

20  decision of the California Court of Appeal for the Third Appellate District on petitioner's direct

21  appeal.  The state court of appeal set forth the claim as follows:

22              After the trial court completed giving its instructions and sent
            the jury to deliberate, it discovered it had not given all of the
23          instructions.  It failed to give the instructions on use of evidence
            concerning a mental disease in determining whether a crime was
24          premeditated and deliberate (CALJIC No. 3.32) and on the use of
            alibi (CALJIC No. 4.50).  The clerk's transcript reveals the jury
25          was sent to the jury room at 3:50 p.m. on July 20, 1995, to begin its
            deliberations.  At 4:29 p.m., *just 39 minutes later*, the jury returned
26          to the courtroom and the court read the last two instructions.

> The [petitioner] contends: "Because the jurors had been in the process of determining appellant's guilt for a *substantial* time before receiving these instructions crucial to appellant's case, there is a *substantial* likelihood that the defense instructions had lost the effect they would have had if the jury had received them at the same time as all the other instructions. This is especially so if the jury believed the lateness of such instruction was a reflection of their lack of importance to their deliberations." (Italics added.)

People v. Cate, slip op. at 9-10. The state court of appeal rejected the claim, distinguishing the California Supreme Court decision[9] relied on by petitioner:

> The [petitioner] asserts the holding in *Stouter* mandates the reversal of his conviction. To the contrary, the 39-minute gap between session of instruction reading bears little resemblance to the 24-hour gap in *Stouter* during which the jury became deadlocked and the court sought a way to help the jury reach a guilty verdict.

> As stated in *Stouter*, the general rule is that a jury may be called back for further instructions after being sent out to deliberate. (142 Cal. at p. 149.) Since there are no circumstances even remotely amounting to unfairness here, the general rule applies.

People v. Cate, slip op. at 11-12.

The general rule is well-settled: "the court may exercise a wide discretion in the matter of charging the jury, and may bring the jury in at any time and give them additional instructions whether requested or not. Allis v. United States, 155 U.S. 117, 15 Sup.Ct. 36, 39 L.Ed. 91; Nichols v. Munsel et ux., 115 Mass. 567." Charlton v. Kelly, 156 F. 433, 438 (9th Cir. 1907). "The ultimate question is 'whether the charge taken as a whole was such as to confuse or leave an erroneous impression in the minds of the jurors.' Powell v. United States, 347 F.2d 156, 158 (9th Cir. 1965)." U.S. v. McCall, 592 F.2d 1066, 1069 (9th Cir. 1979). There is no showing that the 39-minute delay in giving the two defense instructions at issue caused any confusion or left any "erroneous impression in the minds of the jurors." Powell, supra. The state court's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Petitioner's sixth claim for relief should be denied.

---

[9] People v. Stouter, 142 Cal. 146 (1904).

G. Cumulative Error

Petitioner's seventh claim is that the cumulative effect of each of the errors cited in the claims raised in his amended petition require relief.  Petitioner argues that while each error individually may not warrant relief, the sum total of those errors requires granting his petition. This claim was rejected by the state court on petitioner's direct appeal.  See People v. Cate, slip op. at 15.

> The Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair. Chambers [v. Mississippi], 410 U.S. at 298, 302-03, 93 S.Ct. 1038 (combined effect of individual errors "denied [Chambers] a trial in accord with traditional and fundamental standards of due process" and "deprived Chambers of a fair trial"). [Footnote omitted.] The cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal. Chambers, 410 U.S. at 290 n. 3, 93 S.Ct. 1038.

Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007).  "In simpler terms, where the combined effect of individually harmless errors renders a criminal defense 'far less persuasive than it might [otherwise] have been,' the resulting conviction violates due process. See Chambers, 410 U.S. at 294, 302-03, 93 S.Ct. 1038."  Id.

For the reasons set forth in these findings and recommendations, there were no cognizable errors in the claims presented in the first amended petition.  A fortiori, petitioner's seventh claim for relief is without merit.

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

failure to file objections within the specified time may waive the right to appeal the District

Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 25, 2008.


_____
UNITED STATES MAGISTRATE JUDGE

12
cate1466.157